Ellery Johannessen, Esq. WSBA #54530
**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500
ellery@eaj-law.com

Jeffrey C. Toppe, Esq. (*admitted pro hac vice*)
**The Toppe Firm, LLC**
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

**Attorneys for Named Plaintiff**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SOHYUN KIM, on her own behalf and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>L'OREAL USA S/D, INC.,<br><br>*Defendant.* | No. 2:25-cv-02568-JHC<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## I. PRELIMINARY STATEMENT

1. This is a class action against Defendant L'Oreal USA S/D, Inc. ("L'Oreal" or "Lancôme") for sending materially false, deceptive, and misleading marketing emails to residents of Washington.

2. L'Oreal operates several brands as part of its corporate structure, including Lancôme. Lancôme sends marketing emails to Washington consumers, which contain false or misleading information in the subject lines.

3. Lancôme uses a variety of tricks and deceptive language deliberately designed to influence consumer behavior and deliberately designed to trick Washington consumers into making impulsive purchases.

4. *First*, Lancôme often uses subject lines to tout limited-time sales, inducing customers to purchase items out of fear that they might miss an unusually good deal ("**False Urgency Emails**"). For example, Lancôme frequently represents that a sale "ENDS TONIGHT" or that it is in its "FINAL HOURS." However, in every instance identified herein, the promotions did ***not*** end when Lancôme represented they would end. That is because Lancôme either (a) sends an email the next day announcing that the sale or discount has been "extended," or (b) offers the same sale in the days immediately following the represented end-date of the sale. In reality, Lancôme always planned for the sale to continue during the advertised extension, and deliberately designed its subject lines in such a way as to trick consumers into believing their time to get the sale was coming to an imminent end, and thus, into making impulsive purchases.

5. *Second*, in another sleight of hand, Lancôme lures potential customers with email subject lines that misrepresent the contingent nature of a particular promotion ("**Minimum Purchase Emails**"). For example, the subject line "Exclusive Offer! $35 Off Just for You" leads reasonable consumers to believe that ***any*** online purchase will be subject to a $35 discount. In



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

reality, that promotion is subject to a minimum order amount of $100 or more, which contradicts the subject line.

6. *Finally*, Lancôme attempts to improperly influence consumer behavior by sending subject lines that misrepresent that a consumer can claim “free” merchandise. For example, the subject line “Claim Your Free 7-Piece Gift NOW!” leads reasonable consumers to believe that they have qualified to “Claim” a 7-Piece Gift for “Free” (*i.e.* at no cost) (“**Free Gift Emails**”). In reality, the consumer must make a minimum purchase on other merchandise in order to get the free gift promised in the subject line.

7. In these and other instance—seemingly limited only by the company’s marketing creativity—Lancôme is in violation of Washington’s Commercial Electronic Mail Act (“CEMA”), RCW 19.190.020, *et seq*., which prohibits senders of commercial electronic mail from sending emails with materially false or misleading information in the subject line. Each of the emails identified herein (the “Subject Emails”), and others not identified, contains materially false or misleading information in violation of CEMA.

8. By sending emails with subject lines containing materially false and misleading information to Named Plaintiff and the Class (defined below), Lancôme violates CEMA.

9. By sending emails with these types of false and misleading subject lines, Lancôme intends to deceive the recipients.

10. Named Plaintiff brings this action as a class action on behalf of persons residing in Washington, to whom Lancôme sent emails with materially false and/or misleading information in the subject lines.

11. Named Plaintiff’s requested relief includes an award to Named Plaintiff and Class members of statutory damages for each illegal email, and an award of attorneys’ fees and costs.

## II. <u>JURISDICTION</u>



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

12. Defendant has invoked this Court's jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. §§ 1441, 1446, and 1453. *See* ECF No. 1.

13. Venue is proper in the Western District of Washington, under 28 U.S.C. § 1441 because this district and division embrace the place from which Defendant removed this action, Shohomish County Superior Court (Case No. 25-2-10335-31).

## III. PARTIES

14. Named Plaintiff Sohyun Kim ("Named Plaintiff") is a natural person currently residing at 10710 Evergreen Way, L310, Everett, WA 98204 (Snohomish County).

15. Defendant Lancôme is a Delaware corporation doing business within this state and with its principal place of business located at 10 Hudson Yards, New York, NY 10001.

## IV. FACTUAL ALLEGATIONS

### a. CEMA prohibits initiating or conspiring to initiate the transmission of commercial e-mails with false or misleading information in the subject lines.

16. CEMA, by its terms, regulates deceptive email marketing.

17. CEMA was enacted to protect Washington residents' interests in being free from deceptive commercial e-mails.

18. An injury occurs under CEMA any time a commercial e-mail is transmitted that contains materially false or misleading information in the subject line.

19. Under CEMA, it is irrelevant whether misleading commercial e-mails were solicited.

20. CEMA creates an independent, limited, private right of action, which can be asserted by a person who is the recipient of a commercial electronic mail message which contains materially false or misleading information in the subject line. *See, e.g.,* RCW 19.190.020, *et. seq*.

21. A violation of CEMA creates a standalone cause of action.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

**b. <u>Lancôme initiated (or conspired to initiate) the transmission of commercial e-mails with false or misleading information in the subject lines.</u>**

22. Lancôme has initiated (or conspired to initiate) the transmission of commercial electronic mail messages with materially false or misleading information in the subject lines to Named Plaintiff and members of the Class.

23. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

24. Lancôme sent the emails for the purpose of promoting its goods for sale.

25. The emails were sent at Lancôme's direction and were approved by Lancôme.

26. Lancôme violates CEMA because many of the statements in the email subject lines are materially false and misleading on several fronts. There are numerous examples of Lancôme emails that can be shown to have false and misleading information in the subject lines just by reviewing the subject lines of other Lancôme emails. Others can be shown to have false and misleading information in the subject lines just by reviewing the fine print in the body of the emails. The facts alleged below show the types of false and misleading email subject lines Lancôme sends to Washington residents.

27. Lancôme's false or misleading subject lines can be broken into at least three categories: (a) subject lines that describe a specific, limited-time promotion that is not, in fact, limited to the timeframe described in the subject line; (b) subject lines stating without qualification that a particular discount is being offered when, in reality, the discount only applies to orders above a certain dollar amount that is not identified in the subject line; and (c) subject lines stating without qualification that the recipient can claim free products when, in reality, the recipient must spend a minimum amount of money on other merchandise in order to claim the purportedly free products.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

28. In each instance described herein, the subject line conveys an objective statement of fact that is materially false or misleading and that Washington residents would depend on in making consumer purchasing decisions. A non-exhaustive list of examples of subject lines from each category is provided below. Discovery will show additional emails in each of these categories and potentially other categories of false or misleading subject lines.

**a. <u>False Urgency Emails</u>**

29. Lancôme's subject lines frequently advertise the "limited-time" nature of its sales, discounts, and prices. For example, Lancôme frequently advertises that it is the "Last Day" for a given sale, or that a sale "ENDS TONIGHT!" In reality, and by design, it is never the consumer's "Last Day" to obtain the deal, and the deal never actually "ENDS TONIGHT!" That is because the day after the sale was represented as coming to an end, Lancôme either (a) sends another email purporting to "extend" the sale, or (b) simply continues to offer the exact same sale that was purportedly in its final hours. And the sale does not continue because of remaining inventory, or because Lancôme executives gathered to determine whether the sale should be extended. It continues because Lancôme ***always planned*** for the sale to continue beyond the represented end date. These types of emails have the capacity of deceiving consumers into believing it is their last chance to obtain a particular promotion, when that belief is not correct. These types of emails are intended to induce consumers into immediate action, preying on their fear of missing a good deal.

30. For example, on November 30, 2024, as part of a Black Friday promotion, Lancôme sent Named Plaintiff an email with the subject line: "Up to 50% Off - Goodbye Black Friday! 💋" Later that same day, Lancôme sent another email to Named Plaintiff with the subject line: "🚨 BLACK FRIDAY ENDS TONIGHT! 🚨" The fine print in ***each*** of those emails indicated that the sale would ***not***, in fact, "END[] TONIGHT!" and consumers did not have to say "Goodbye" to the Black Friday deal. Instead, the fine print indicated that the sale would end ***two days later***, on



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

December 2, 2024 (fine print indicating "Offer valid from 3:00 AM ET November 26, 2024 ***through 11:59 PM ST December 2, 2024***") (emphasis added). And in fact, the very next day, on December 1, 2024, Lane Bryant sent an email with the subject line: "IT'S ON! Cyber Monday Is Here" offering the exact same deal that purportedly expired the night before. And on December 2, 2024, Lancôme sent two more emails with the subject lines: "Up to 50% Off! Cyber Monday – It's NOW or NEVER!" and "FINAL HOURS! Up to 50% Off Cyber Monday!" These representations ***also*** turned out to be lies, because the next day, on December 3, 2024, Lancôme sent Named Plaintiff an email with the subject line: "UP TO 50% OFF EXTENDED ❤️" in which it offered exact same deal that purportedly expired first on November 30, 2024 and again on December 2, 2024. Lancôme frequently sends these types of false representations to Washington residents.

31. By stating that a sale is ending at a specific time, Lancôme suggests an offer's rarity or urgency, stimulating consumers' desire to get the deal before it's gone while simultaneously inducing fear of missing a good buy. In fact, the Federal Trade Commission has directed that sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5; *see also Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025) (recognizing that such false or misleading emails violate CEMA).

32. Lancôme deliberately designs the subject lines of its marketing emails to tap into consumer urges to obtain a good deal before it's gone. These types of subject lines, including those identified herein, contain materially false and misleading information, which has the capacity, tendency, or effect of deceiving the recipient into believing an objectively false fact (*i.e.* the end date of the sale). In doing so, Lancôme attempts to spur consumers into making impulsive purchases.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

33. Discovery will show that Lancôme employees did not gather at the end of the planned sale and determine that the sale should be extended. Instead, the sale was always planned to continue and the advertised "extension" is fake. Lancôme regularly claims or suggests that sales will only be available for a certain amount of time in the email subject line, only to "extend" the sale immediately after the sale was purported to end. In all instances identified herein, the sale is available for longer than the time period stated in the email subject line.

34. The clear purpose of this tactic is to grab the consumer's attention and induce immediate action to secure savings that will not be available beyond a specific window of time. Research indicates that limited-time discounts create a sense of urgency that changes consumer decision making, including by persuading customers to purchase items sooner than they otherwise would, purchase more or different items than they otherwise would, or forego comparison shopping. Lancôme designs the subject lines of its marketing emails to tap into these consumer urges—going so far in some emails as to feature an alarm emoji (🚨) and words such as "ENDS TONIGHT" in the subject line to highlight the purported urgency of the offer—usually emphasized in all-capital letters. Lancôme leverages this tactic and its well-known psychological effects to influence consumer behavior in a deceitful way.

35. Lancôme likely would not use this marketing tactic, or at least would use it less frequently, if it were not successful in generating sales. Lancôme's frequent use of this tactic suggests discovery will show that Lancôme has conducted A/B testing of these email subject lines and determined that this tactic increases sales, which in turn, will show that representations of fact in an email subject line regarding the expiration or extension of limited-time promotions are the among the type of facts Washington "residents would depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

36. The FTC has recognized that a common method of "manipulate[ing] consumer choice by inducing false beliefs" is creating a false sense of urgency that a consumer's time to act is limited. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

37. The FTC has stated that such "False Limited Time Message[s]" create "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light* at 22.

38. These types of "False Limited Time Message[s]" are psychologically effective, and there is "considerable evidence" that, generally speaking, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture* at 26.

39. The purpose of putting this perceived time pressure on consumers is to attempt to induce consumers to make hasty purchases by "rely[ing] on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

40. When confronted with this time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

41. False time scarcity claims thus have the capacity to deceive consumers by making them think that they have to act now, or they'll miss the opportunity to get the deal.

42. False time scarcity claims are a consistent theme in Lancôme's email marketing tactics, and Lancôme uses these tactics in an attempt to induce customers to purchase its products based on fear of missing a good deal, and not genuine desire to purchase the products.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

43. Lancôme, as set forth below, has sent many emails using this tactic, and in each instance, the purpose of placing these fictional time limits on the deals was to attempt to induce the recipient into making a purchase ***now***, preying on their fear of missing the deal. And thus, the information contained within the subject lines of the emails set forth below was materially false and/or materially misleading.

44. Lancôme sent the following **False Urgency Emails** to Named Plaintiff:

a. On Saturday, November 30, 2024, Lancôme sent Named Plaintiff two emails with the subject lines: "Up to 50% Off - Goodbye Black Friday!" and "BLACK FRIDAY ENDS TONIGHT!" The fine print of each of those emails indicated that the "Offer [was] valid from 3:00 AM ET November 26, 2024 through 11: 59 PM ST ***December 2, 2024***," in contradiction to the information set forth in the subject line. (Emphasis added). And in fact, the next morning, Lancôme sent Named Plaintiff an email with the subject line: "IT'S ON! Cyber Monday Is Here," in which Lancôme offered the exact same deal that had purportedly expired mere hours ago. Thus, the information in each of the November 30, 2024 emails indicating that the sale was coming to an imminent end was false and misleading, and had the capacity, tendency, or effect of deceiving the recipients concerning the actual duration of the sale.

b. On Monday, December 2, 2024, Lancôme sent Named Plaintiff an email with the subject line: "Up to 50% Off! Cyber Monday – It's NOW or NEVER!" and a second email with the subject line: "FINAL HOURS! Up to 50% Off Cyber Monday!" However, the very next day, Lancôme sent Named Plaintiff an email indicating that "UP TO 50% OFF EXTENDED." Thus, it was not the "FINAL HOURS" to obtain the deal, and the information in the subject line indicating


**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

that the sale was coming to an imminent end was false and misleading, and had the capacity, tendency, or effect of deceiving the recipients concerning the actual duration of the sale.

c. On Thursday, March 28, 2024, Lancôme sent Named Plaintiff an email with the subject line: “Last Chance for 30% Off Sitewide: Sign Up Now!” The fine print of this email indicated that the “Offer [was] valid from 3:00 AM ET March 22, 2024 through 11:59 PM ST ***March 29, 2024***,” in contradiction to the information set forth in the subject line. (Emphasis added). And in fact, the next day, Lancôme sent Named Plaintiff an email with the subject line: “Last Day to Save 30% Sitewide.” However, on March 30, 2024, Lancôme sent Named Plaintiff an email indicating “It’s Not Over Yet! 30% Sitewide is Extended.” Therefore, the information in the subject line of the March 28 email that it was Named Plaintiff’s “Last Chance” to obtain the deal, and the representation in the March 30 email that it was Named Plaintiff’s “Last Day” to get the deal were both false and misleading, and had the capacity, tendency, or effect of deceiving the recipients concerning the actual duration of the sale.

d. On Friday, October 11, 2024, Lancôme sent Named Plaintiff an email with the subject line: “FREE Full-Size Gift Ends Tonight! Code Inside.” The fine print of this email indicated that the free gift “Offer [was] valid from 3:00 AM ET October 8, 2024 through 11:59 PM ST ***October 12, 2024***,” in contradiction to the information set forth in the subject line. (Emphasis added). And in fact, the next morning, Lancôme sent Named Plaintiff an email with the subject line: “Plot Twist! FREE Full-Size Beauty - Extended!” Thus, the deal off sale did not “End[] Tonight,” as it was extended the very next day. Therefore, the



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

information in the subject line was false and misleading, and had the capacity, tendency, or effect of deceiving the recipients concerning the actual duration of the promotion.

**b. <u>Free Gift Emails</u>**

45. Lancôme also sends emails with subject lines that promise that the recipient can claim a "FREE" gift. However, the gift is never actually "FREE," and is always contingent upon the consumer spending a minimum amount of money on other products. These types of emails have the capacity of deceiving the recipient into believing that they have already qualified to claim free gifts, when in fact, the recipient must purchase other full-priced merchandise in order to obtain the free gift promised in the subject line.

46. The FTC has stated that "[w]hen making 'Free' or similar offers all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 C.F.R. § 251.1 (also stating that "disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, ***is not regarded as making disclosure at the outset***.") (emphasis added).

47. The conditions and obligations upon which receipt of the "Free" gifts Lancôme says the recipient can claim are not set forth in the subject lines (*i.e.* the conditions are not set forth "at the outset of the offer").

48. Once consumers are induced to perceive the "gift" as effectively theirs to claim, failing to complete the transaction feels like giving something up—a loss—rather than simply declining a purchase. This endowment-like framing at the outset of the offer increases the perceived pain of forfeiture once the full terms of the offer are disclosed. Lancôme's minimum



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

spend condition, which is omitted from its subject lines, therefore operates as a predictable pressure mechanism: recipients increase the size of their purchase or make purchases they otherwise would not have made in order to avoid the felt loss of the promised "free" gift.

49. Defendant's campaign exploited the same mechanism by (i) announcing a "free gift" in the subject line to trigger entitlement and commitment, then (ii) revealing in the email body that the recipient must spend a minimum amount of money to avoid forfeiting that "free" benefit. The predictable and intended result was to induce purchases and increased spending by converting what should have been a transparent price term ("free gift with $45 purchase") into a psychologically coercive "loss" frame (i.e. initially representing that the recipient can "Claim [their] Free [] Gift NOW," but only later disclosing that, if they don't spend $45, they will lose the opportunity to claim the free gift).

50. Lancôme deliberately designs the subject lines of its marketing emails to tap into consumer urges to obtain free products, and to prey on consumer fears of losing out on free products that they are led to perceive as theirs to claim. In doing so, Lancôme attempts to induce consumers into spending more money than they otherwise intended when they first received the offer. For example, a consumer is more likely to spend more money if the deal requires that the consumer spend a minimum amount of money to obtain the promised free product(s).

51. And if the consumer chooses not to satisfy the minimum spend, then the consumer will not, in fact, receive the promised free gift, regardless of whether or not the consumer makes a purchase in an amount below the requisite minimum spend.

52. Lancôme likely would not use this marketing tactic, or at least would use it less frequently, if it were not successful in generating sales. Lancôme's frequent use of this tactic suggests discovery will show that Lancôme has conducted A/B testing of these email subject lines and determined that this tactic increases sales, which in turn, will show that representations of fact



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

in an email subject line regarding the availability of free gifts are the among the type of facts Washington "residents would depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38.

53. In fact, some of Lancôme's promotional emails do contain limiting language in the subject lines indicating that a minimum purchase is required in order to obtain a specific promotion. For example, Lancôme frequently sends emails stating things like, "***Spend $125,*** Receive a Gift Worth $258!" (Emphasis added). The fact that Lancôme sends emails that ***do*** contain these material limitations in the subject lines serve to highlight the false and misleading nature of the emails that leave out these material conditions, and also serves to create more confusion and misunderstanding in consumers' minds when reading and evaluating the statements made in subject lines of these types of emails. It also shows that Lancôme knows how to send subject lines that comply with CEMA.

54. Lancôme sent the following **Free Gift Emails** to Named Plaintiff:

a. On Thursday, January 19, 2023, Lancôme sent Named Plaintiff an email with the subject line: "JUST IN [] Our Free 5-Piece Gift is Here!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $45, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

b. On Saturday, March 25, 2023, Lancôme sent Named Plaintiff an email with the subject line: "30% Off Sitewide + Free Travel Minis Ends TONIGHT." However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $70, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

c. On Saturday, March 25, 2023, Lancôme sent Named Plaintiff an email with the subject line: "Last Day For 2 Incredible Offers: 30% Off Sitewide + Free Travel Minis." However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $70, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

d. On Thursday, April 13, 2023, Lancôme sent Named Plaintiff an email with the subject line: "2 Days Left to Choose Your Free 7-Piece Gift!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $42, which was a material limitation on the offer excluded from


**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

e. On Friday, April 14, 2023, Lancôme sent Named Plaintiff an email with the subject line: "ENDS TONIGHT! Claim Your Free Gift!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $42, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

f. On Friday, April 14, 2023, Lancôme sent Named Plaintiff an email with the subject line: "LAST CALL to Claim Your Free Gift!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $42, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

g. On Saturday, October 21, 2023, Lancôme sent Named Plaintiff an email with the subject line: "2 Days Left to Receive a FREE Gift!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $42, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

h. On Sunday, October 22, 2023, Lancôme sent Named Plaintiff an email with the subject line: "ENDS TONIGHT! Claim Your Free Gift." However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $42, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

i. On Wednesday, January 3, 2024, Lancôme sent Named Plaintiff an email with the subject line: "Customize Your Free 4-Piece Gift!" However, in order to



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

claim the "free" gift, Named Plaintiff would have had to spend a minimum of $80, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

j. On Monday, September 9, 2024, Lancôme sent Named Plaintiff an email with the subject line: "FREE Gift Alert! Customize Your 4-Piece Set." However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $50, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

k. On Thursday, December 12, 2024, Lancôme sent Named Plaintiff an email with the subject line: "FREE 4-Piece Gift! + Up to 25% Off Sitewide!" However, in order to claim the "free" gift, Named Plaintiff would have had to spend a minimum of $50, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not "free," and thus the information in the subject line of this email was materially false and/or misleading, and had



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

l. On Wednesday, April 2, 2025, Lancôme sent Named Plaintiff an email with the subject line: “FREE 7-Piece Gift + Luxury Sizes.” However, in order to claim the “free” gift, Named Plaintiff would have had to spend a minimum of $45, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not “free,” and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

m. On Tuesday, April 8, 2025, Lancôme sent Named Plaintiff an email with the subject line: “Claim Your Free 7-Piece Gift NOW!” However, in order to claim the “free” gift, Named Plaintiff would have had to spend a minimum of $45, which was a material limitation on the offer excluded from the subject line. Therefore, the gift was not “free,” and thus the information in the subject line of this email was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim free items, when in fact the items could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

**c. <u>Minimum Purchase Emails</u>**

55. Lancôme also sends emails with subject lines stating that a particular discount is available without qualification when, in reality, the offer is only available for orders above a certain dollar amount that is not identified in the subject line. Such false and misleading statements trick the consumer into thinking the promotion has no strings attached, and create a sense that the recipient can apply the discount for any purchase they may make. In reality, these seemingly unconditional offers are subject to minimum spend requirements that are not disclosed in the subject line. This is a classic bait-and-switch tactic that entices consumers to believe the promotional offer has broader application than it truly does.

56. For example, Lancôme sent an email with a subject line promising an "Exclusive Offer! $35 Off Just for You." But it is not revealed in the subject line that, in order to obtain the "Exclusive Offer," the consumer must spend $100 to get the $35 off. There is nothing in the subject line that communicates to the consumer that the advertised promotion is limited in any way to purchases above a specific amount. In other words, it was false and misleading for Lancôme to state that an unqualified discount was available, when in fact the discount was qualified by a minimum purchase. This was an objective "representation[] of fact" regarding the "availability of a promotion," which is the type of fact Washington residents "would depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

57. Just as with the **Free Gift Emails**, recipients of the **Minimum Purchase Emails** are induced to perceive the $35 discount as effectively theirs to claim, and failing to complete the transaction feels like giving something up—a loss—rather than simply declining a purchase. This endowment-like framing at the outset of the offer increases the perceived pain of forfeiture once the full terms of the offer are disclosed. Lancôme's minimum spend condition, which is omitted from its subject lines, therefore operates as a predictable pressure mechanism: recipients increase



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

the size of their purchase or make purchases they otherwise would not have made in order to avoid the felt loss of the promised $35 off.

58. Defendant's campaign exploited the same mechanism by (i) announcing a specific discount in the subject line to trigger entitlement and commitment, then (ii) revealing in the email body that the recipient must spend a minimum amount of money to avoid forfeiting that $35 benefit. The predictable and intended result was to induce purchases and increased spending by converting what should have been a transparent price term (i.e. "$35 off $100+") into a psychologically coercive "loss" frame (i.e. initially promising $35 off, but only later disclosing that, if the recipient does not spend at least $100, they will lose the opportunity to claim the $35 discount).

59. Lancôme deliberately designs the subject lines of its marketing emails to tap into consumer urges to obtain discounts on products, and to prey on consumer fears of losing out on a discount that they already perceive as theirs to claim. In doing so, Lancôme attempts to induce consumers into spending more money than they otherwise intended when they first received the offer. For example, a consumer is more likely to spend more money if the deal requires that the consumer spend a minimum amount of money to obtain the promised discount.

60. And if the consumer chooses not to satisfy the minimum spend, then the consumer will not, in fact, receive the promised discount, regardless of whether or not the consumer makes a purchase in an amount below the requisite minimum spend.

61. Lancôme likely would not use this marketing tactic, or at least would use it less frequently, if it were not successful in generating sales. Lancôme's frequent use of this tactic suggests discovery will show that Lancôme has conducted A/B testing of these email subject lines and determined that this tactic increases sales, which in turn, will show that representations of fact in an email subject line regarding the availability of unconditional discounts are the among the



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

type of facts Washington "residents would depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38.

62. Lancôme sent Named Plaintiff the following **Minimum Purchase Emails**:

a. On Tuesday, January 9, 2024, Lancôme sent Named Plaintiff an email with the subject line: "Exclusive Offer! $35 Off Just for You." However, in order to obtain the $35 off, Named Plaintiff would have had to spend a minimum of $100. Therefore, the information in the subject line was materially false and/or misleading, and had the capacity, tendency, or effect of deceiving the recipient into believing they had already qualified to claim a specific discount, when in fact the discount could only be claimed by making a large minimum purchase, which was a material limitation on the offer, and not disclosed in the subject line.

63. Each of the misrepresentations in the subject lines of the Subject Emails was objectively materially false or materially misleading, in the sense that a significant number of unsophisticated consumers in Washington would attach importance to the information in the subject lines in determining a choice of action. *See, e.g., Brown v. Old Navy, LLC,* 4 Wash. 3d 580, 596, 567 P.3d 38, 47 (2025) (finding that "representations of fact [in email subject lines]—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts" are statements that Washington consumers "would depend on in making their consumer decisions") (emphasis added).

64. Named Plaintiff received and read the subject lines of each of the Subject Emails at or around the time the Subject Emails were sent.

c. **<u>Lancôme sends commercial emails to consumers whom it knows, or has reason to know, reside in Washington.</u>**



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

65. Lancôme sent the Subject Emails to email addresses that Lancôme knew, or had reason to know, were held by Washington residents, either because (i) Lancôme had a physical address that was associated with the recipient based on past purchases; (ii) Lancôme had access to data regarding the recipient indicating which state they resided in; or (iii) information was available to Lancôme upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

66. Lancôme knows where many of its customers reside through several methods.

67. First, for any person that places an order online from Lancôme, Lancôme associates an email address with a shipping address and/or billing address for that order.

68. Second, Lancôme encourages online shoppers to create online accounts. Customers save information in their Lancôme accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers.

69. Third, discovery will show that Lancôme employs methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Lancôme's marketing emails, including by identifying their physical location. Discovery will also show that Lancôme gathers information such as geocoordinates and IP addresses from individuals who click on links in Lancôme commercial emails, and that Lancôme can use such information to determine whether the recipient is in Washington.

70. Fourth, Lancôme also utilizes cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Lancôme's marketing emails and that visit its website. For example, Lancôme has installed the Meta Pixel on its website, which identifies website visitors and can identify specific Facebook and Instagram users that visit the Lancôme website; information that can be associated with the data collected by Meta on where that consumer resides. Lancôme also employs tracking technologies provided by



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

Google, Inc., Yahoo! Inc., FullStory, Inc., Twitter, Inc., Microsoft, Inc., and others that may be able to locate consumers in Washington.

71. Fifth, discovery will show that Lancôme employs sophisticated third parties who create profiles of customers and potential customers, including their email address and physical location.

72. Lastly, Lancôme also knew, should have known, or had reason to know that it sends marketing emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

73. Discovery will show that, at the time it sent the Subject Emails, and other misleading emails that will be discovered during the course of this litigation, Lancôme had access to the data described above regarding the location of consumers in Washington to whom it sent the emails.

74. Named Plaintiff has placed numerous online orders from Lancôme, and has listed her shipping address as being in Washington

**d. <u>Lancôme initiated (or conspired to initiate) the transmission of the Subject Emails to Named Plaintiff and members of the Class.</u>**

75. At all times relevant to this Complaint, Named Plaintiff resided in Washington.

76. Named Plaintiff receives emails from Lancôme at a gmail.com email address.

77. Lancôme knows, or has reason to know, that Named Plaintiff's email address is held by a Washington resident. Named Plaintiff has an account with Lancôme reflecting her home address in the State of Washington. Named Plaintiff has made several purchases from the Lancôme website that have been delivered to her home in Washington.

78. Lancôme sent the Subject Emails to Named Plaintiff for the purpose of promoting Lancôme's goods for sale.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

79. Lancôme initiated the transmission or conspired to initiate the transmission of the Subject Emails to Named Plaintiff.

80. Named Plaintiff has identified 20 emails with false or misleading subject lines sent to Named Plaintiff by Lancôme.

81. These emails were sent between January 19, 2023 and April 9, 2025, showing that Lancôme engaged in this conduct throughout the relevant time period.

## V. CLASS ACTION ALLEGATIONS

82. Named Plaintiff brings this action, both individually and as a class action, on behalf of similarly situated recipients of commercial electronic mail sent by Lancôme pursuant to Rule 23 and seek to represent the following Class, defined as:

> **All Washington residents to whom Lancôme sent, within four years before the date of the filing of this complaint until the date of trial, an email with a subject line that (a) states or implies that a particular promotion will end at a specified time, when the promotion actually continued beyond the specified end time; (b) advertises a promotion that is subject to a minimum order amount under the terms of the promotion, but fails to disclose the minimum order amount; or (c) states or implies that the recipient of the email will be given a free gift, but fails to disclose that receipt of the gift is contingent on the recipient making a minimum purchase.**

Excluded from the Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.

83. The Class, as defined above, is identifiable. Named Plaintiff is a member of the Class.

84. The Class consists, at a minimum, of 500 consumers and is thus so numerous that joinder of all members is clearly impracticable. *See* ECF No. 1.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

85. There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual members of the Class.

86. With respect to the Class, the common and predominating questions include, but are not limited to:

(a) Whether the emails Lancôme sent to the Class are subject to RCW 19.190.010, *et seq.*;

(b) Whether Lancôme sent the Subject Emails to email addresses it knew or had to reason to know were held by Washington residents;

(c) Whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 ("CPA");

(d) Whether the subject lines of emails sent by Lancôme contain materially false or misleading information;

(e) Whether Lancôme initiated the transmission or conspired to initiate the transmission of the Subject Emails to Class Members residing within Washington; and

(f) The nature and extent of Class-wide injury and damages.

87. Claims of Named Plaintiff are typical of the claims of the respective members of the proposed Class and are based on and arise out of similar facts constituting the wrongful conduct of Defendant.

88. Named Plaintiff will fairly and adequately protect the interests of the proposed Class.

89. Named Plaintiff is committed to vigorously litigating this matter.

90. Further, Named Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.


**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

91. Neither Named Plaintiff nor undersigned counsel have any interests which might cause them not to vigorously pursue this claim.

92. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class.

93. A class action is the superior method for fair and efficient adjudication of the controversy.

94. The likelihood that individual members of the proposed Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

95. The likelihood that individual members of the proposed Class will prosecute separate actions is remote also because each individual claim involves a relatively small amount.

96. Counsel for Named Plaintiff and the proposed Class is experienced in class actions and foresees little difficulty in the management of this case as a class action.

## VI. CLAIMS TO RELIEF

### First Claim to Relief
### Violation of the Commercial Electronic Mail Act, RCW 19.190.020 *et seq*.

97. Named Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

98. CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that contains false or misleading information in the subject line.

99. Lancôme is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

100. Lancôme initiated the transmission or conspired to initiate the transmission of one



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

or more commercial electronic mail messages to Named Plaintiff and members of the proposed Class.

101. The Subject Emails contained false or misleading information in the subject lines in the ways described herein.

102. Under CEMA, it is irrelevant whether the aforementioned emails were solicited.

103. Lancôme's sending of each Subject Email is a discrete violation of CEMA.

104. Lancôme's acts and omissions violated CEMA § 19.190.020(1)(b).

## Second Claim to Relief
### *Per se* violation of the Consumer Protection Act, RCW 19.86.020, *et seq*.

105. Named Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

106. Named Plaintiff and members of the Class are "persons" within the meaning of the CPA, RCW 19.86.010(1).

107. Lancôme violated CEMA by initiating or conspiring to initiate the transmission of a commercial electronic mail messages to Named Plaintiff and members of the Class that contain false or misleading information in the subject line.

108. A violation of CEMA is a "*per se*" violation of the Washington CPA, RCW 19.86.010, *et seq*.; RCW 19.190.030. *See Brown v. Old Navy, LLC*, 4 Wn.3d 580, 567 P.3d 38 (2025).

109. A violation of CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law.

110. Lancôme's violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

111. Lancôme's unfair or deceptive acts or practices vitally affect the public interest and



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

112. Pursuant to RCW 19.19.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.

113. As a result of Lancôme's acts and omissions, Named Plaintiff and Class members are entitled to $500 in statutory damages for each and every email that violates CEMA.

114. Lancôme engaged in a pattern and practice of violating CEMA.

115. As a result of Lancôme's acts and omissions, Named Plaintiff and members of the Class are entitled to $500 in statutory damages for each and every email that violates the CEMA. The full amount of damages will be proven at trial.

116. Named Plaintiff and members of the Class are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff respectfully prays for judgment as follows:

A. An order assuming jurisdiction of this case;

B. an order certifying the Class;

C. an order appointing Named Plaintiff as representative of the Class and undersigned counsel as Class counsel for the Class;

D. an order awarding statutory damages where applicable;

E. an award of attorneys' fees, pursuant to RCW 19.86.090;

F. an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and the members of the proposed Class; and



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500

G. award such other relief as the court deems appropriate.

## VII. DEMAND FOR JURY TRIAL

Named Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 6, 2026

**/s/ Ellery Johannessen**
Ellery Johannessen, Esq., WSBA #54530
**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500
ellery@eaj-law.com

**/s/ Jeffrey C. Toppe**
Jeffrey C. Toppe, Esq. (*admitted pro hac vice*)
**The Toppe Firm, LLC**
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

**Attorneys for Named Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of March, 2026, a copy of the foregoing was served via the Court's CM-ECF filing system, and via email by consent of counsel, on the following attorneys for Defendant:

John A. Goldmark (johngoldmark@dwt.com)
Caitlyn Courtney (caitlyncourtney@dwt.com)
Alec Zatirka (aleczatirka@dwt.com)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610

***Attorneys for Defendant***

**/s/ Jeffrey C. Toppe**
Jeffrey C. Toppe, Esq.



**Johannessen Law, PLLC**
5400 California Ave. SW, Suite B
Seattle, WA 98136
(206) 594-0500